Bell v. Beveridge.

*272]

---

## BELL *v.* BEVERIDGE.

### *Marine insurance.—Abandonment.*

The plaintiff, a resident in Philadelphia, received notice, in August 1793, of the seizure by the French government, of goods which he had insured ; soon afterwards, he left home, in consequence of the appearance of the pestilence in Philadelphia, and did not return until about the 19th November next ensuing, and then went to South Carolina on business ; it was not, however, until the 21st January 1794, that he intimated to the underwriters an intention to abandon, when he stated in a letter to them, " that he meant to abandon:" *Held*, that by such a declaration, the plaintiff had made his election to abandon; and that there is no particular form of abandonment, though it must be made within a reasonable time after intelligence of the loss has been received : what is a reasonable time, is a question of fact.

THIS was an action upon an open policy, dated the 10th of March 1793, on goods on board the Andrew, Captain Macken, bound from Charleston

Bell v. Beveridge.

to Amsterdam.   The ship sailing on the voyage insured, was captured, on
the 11th of April 1793, by a French privateer, and carried into L'Orient,
where, after a few days' detention, she was acquitted and restored.   On the
26th of April 1793, however, the French government seized the cargo for
public use, promising to pay a liberal fixed price for it to the owners ; but
after repeated solicitations, the consignee, in 1796, *abandoned the   [*273
hope of seeing a performance of the promise, and returned to America.
It appeared, on the trial of the cause, that the master's protest, dated the
17th of May 1793, had been transmitted to the owners of the ship, in Phila-
delphia, under cover of a letter from Amsterdam, dated the 17th of May
1793 ; and the notice of the capture was given by them to the plaintiff, at
least as early as the month of August 1793.   The yellow fever soon after-
wards made its appearance in the city ; and the plaintiff retired, with his
family, into the country, on the 10th of September ; but in common with
the rest of the citizens, he returned after the calamity had ceased, about the
19th of November ; and then went on a journey of business to South
Carolina.   It was not, however, until the 21st of January 1794, that he
intimated to the underwriters an intention of abandonment ; and even then,
he did not directly abandon, but only stated, in a letter, " that he meant to
abandon."

The general question was, whether the abandonment, had been made
in due season, to entitle the plaintiff, in this case, to recover for a total
loss ?

The *defendant* contended, that the words of the letter from the plaintiff,
did not amount to an actual abandonment ; but only imported an intention
to abandon ; that by such equivocal language, he was enabled to take for
himself all the chances of an advantageous settlement in France : while
the defendant was not empowered to pursue the property on account of
the underwriters ; that, independent of the ambiguity of the letter, inti-
mating his intention to abandon, the abandonment was not made in a rea-
sonable time, on the 21st of January 1794, notice of the loss having been
received in August 1793 ; and that the excuse of the yellow fever, though
it would apply to a personal interview, would not apply to a communica-
tion by writing.   Park, 161–2 ; 2 Dall. 284 ; 1 Burr. 349 ; 2 Ibid. 697 ;
5 Ibid. 1241; 3 Atk. 195; 2 Burr. 683; 2 Ibid. 1198, 1214; Doug. 219; 1 T.
R. 608 ; 1 Esp. 237 ; Park, 192 ; 2 Mag. 175, 416 ; Park, 92, 82, 81, 172.

The *plaintiff's* counsel insisted, that under the peculiar circumstances
of the case, the abandonment was made in due season; and that the terms of
the abandonment were sufficiently positive.

The Court, in the charge to the jury, stated, that no particular form of
words was necessary to constitute an abandonment ; that by declaring he
meant to abandon, the plaintiff had made his election, and could never
afterwards retract.   That an abandonment must be made within a rea-
sonable time ; but that what constituted a reasonable time, was a question
of fact, depending upon the relative situation of the parties, the time and
the place, *after notice to the assured of the loss ; and that in the   [*274
present case, there did not appear to have been any design to waive

the right of abandonment, though its exercise was suspended by a public calamity, and other fortuitous occurrences.

Upon the whole, the opinion of the Court was in favor of the plaintiff, and the jury gave a verdict accordingly. (*a*)

---

(*a*) For a better report of the charge of the court, which was delivered by SHIP-PEN, C. J., see 1 Binn. 52, note.